LOUISE HOPWOOD *vs.* ISRAEL POKRASS.

Bristol.    October 26, 1914. — November 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

</div>

*Evidence*, Presumptions and burden of proof. *Agency*, Existence of relation, Scope of employment.

At the trial of an action of tort for personal injuries received from being run over by a wagon, there was evidence that, less than half an hour before the accident,

the wagon, which bore the defendant's last name preceded by the initial of his first name, was seen being loaded with old mortar taken from a house; that at the time of the accident it was loaded with lime and plaster and was on the route to a public dump near the place where the accident occurred and was being driven by a boy twelve or thirteen years of age; that after the accident the defendant interviewed the plaintiff, and, without asserting that the driver of the wagon was not his servant or that he was not acting within the scope of his employment, stated that the team belonged to him, that the driver was "his boy," and that the driver had called out to the plaintiff. The defendant offered no evidence. *Held*, that findings were warranted that the team was the defendant's and was being driven by one who was his servant and who was acting within the scope of his employment.

CROSBY, J. This is an action to recover for personal injuries received by the plaintiff through coming in collision with a horse and wagon when she was crossing a street in Fall River.* There was evidence that the plaintiff was in the exercise of due care and that the driver of the team was negligent. The only questions presented are whether the team was owned by the defendant, and whether at the time of the accident it was driven by his servant acting within the scope of his employment.†

The plaintiff testified that the defendant came to her house the day after the accident and told her that the team which injured her belonged to him and that the driver at the time was "his boy." She further testified: "He asked me if I heard the boy call out," and "He said the boy called out to me." There was evidence that the boy was twelve or thirteen years of age; that this team was seen on Harrison Street between half past six and seven o'clock on the evening of the accident, and then was being loaded with old mortar which was taken from a house on that street; that at the time of the accident, which occurred

---

* It appeared in evidence that the accident happened on Covel Street at the corner of County Street; that Harrison Street runs north and south but does not extend as far north as County Street by one block; that Covel Street runs north and south beginning at its south end at County Street; that Covel and Harrison Streets are in nearly a direct line north and south; that to go from Harrison Street to Covel Street one must turn east or west at the north end of Harrison Street and go half a block; then take a street running north and south and go north one block to County Street; then go east or west half a block to Covel Street.

† The case was tried before *McLaughlin*, J. There was a verdict for the plaintiff in the sum of $1,000; and the defendant alleged exceptions.

at the corner of Covel and County Streets, a little before seven
o'clock that evening, there was a load of lime and plaster on the
wagon, which weighed about twelve hundred pounds; that the
team was seen turning from County Street into Covel Street,
and "that there was a public dump on Covel Street near where
the accident happened." There also was evidence that at the time
of the accident the wagon had on it the name, "I. Pokrass."

At the close of the plaintiff's case the defendant rested with-
out offering any evidence. If the jury believed the plaintiff's
testimony a finding that the defendant owned the team was
well warranted, aside from the evidence as to the name which
was on the wagon. There was no direct evidence to show that
the driver of the team was in the defendant's employ except that
the defendant referred to him as "my boy." We think the jury
properly might have inferred from this evidence that the driver
was the servant of the defendant, as similarly might have been
inferred had the driver been a man of mature years and the
defendant had spoken of him as "my man."

Upon the evidence whether the driver was acting within the
scope of his employment, these facts might have been found:
That this team was owned by the defendant and was driven by
his servant; that shortly before the accident it was loaded with
refuse at a house on Harrison Street and was being driven to the
public dump on Covel Street when the accident occurred; and
that the next day after the accident the defendant called upon
the plaintiff and, knowing that she had been struck by his team,
told her that the driver called out to her, and asked her if she did
not hear him. It will be observed that he did not refer to the em-
ployment of the boy or to the work in which he was engaged at
the time of the accident. Apparently his interview with the plain-
tiff was for the purpose of making the assertion that the boy had
warned her of the approach of the team, and inferentially that
the accident was due not to any fault on the part of the driver,
but to her own carelessness.

In view of this conversation, of the work which was being done
with the team just before the accident, of the presence of the
name upon the wagon, and the reasonable inferences to be drawn
therefrom, the jury were warranted in finding that at the time
the plaintiff was injured the team was owned by the defendant,

that it was driven by his agent and servant, and that the latter was acting within the scope of his employment. *D'Addio* v. *Hinckley Rendering Co.* 213 Mass. 465.

*Exceptions overruled.*

The case was submitted on briefs.

*D. R. Radovsky,* for the defendant.

*C. L. Baker, E. A. Thurston & B. Cook, Jr.,* for the plaintiff.